UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20885-RAR

**JOSE SEIGLIE**,

    Plaintiff,

v.

**CITY OF DORAL**,

    Defendant.
_____/

**ORDER GRANTING IN PART DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**THIS CAUSE** comes before the Court on Defendant City of Doral's ("Defendant" or "City") Motion to Dismiss Counts I, II, and III[1] of the Amended Complaint and to Strike Plaintiff's Request for Punitive Damages[2] ("Motion"), [ECF No. 9], filed on June 25, 2025. The Court has reviewed the Motion, Plaintiff's Response in Opposition, [ECF No 14], Defendant's Reply in Support, [ECF No. 15], and is otherwise fully advised. Accordingly, Defendant's Motion is **GRANTED IN PART** as set forth herein.

**BACKGROUND**

Plaintiff Jose Seiglie sues his former employer, the City of Doral, alleging that he was subjected to unlawful discrimination and retaliation—which resulted in his demotion and subsequent termination. Plaintiff, who is 67 years old, most recently served as a Major in charge

---

[1] Defendant does not move to dismiss Plaintiff's remaining claim, Count IV, and notes that it will file an answer and affirmative defenses upon resolution of Defendant's Motion. *See* Mot. at 2 n.1. As such, the Court does not address Count IV, nor the facts related to it, in this Order.

[2] Plaintiff has withdrawn his claim for punitive damages, mooting this portion of Defendant's Motion. *See* [ECF No. 14] at 18.

of administration for the City Police Department.  *See* Am. Compl., [ECF No. 8] ¶¶ 8, 51.  Previously, Plaintiff served as the Deputy Chief of Police.  *Id*. at 8.  According to Plaintiff, he "had an unblemished record of achievement and success."  *Id*. ¶ 14.

Plaintiff alleges that the Mayor, Police Chief, and other city officials persistently pressured him and other, older police officers to leave the force.  Am. Compl. ¶ 10.  Plaintiff asserts that he was "repeatedly harassed with questions about when he would leave the City Police Department so he could be replaced with younger personnel."  *Id*. ¶ 11.  In addition, Plaintiff alleges that the Mayor publicly stated in a radio interview that he was "putting a young team in the police department."  *Id*. ¶ 16.  On or around August 15, 2023, the new Deputy Police Chief "informed Plaintiff he needed to vacate his position in order for the City to promote younger employees."  Am. Compl. ¶ 17.  And on January 22, 2024, the Police Chief "tried to orchestrate a meeting for the specific purpose of 'buying [Plaintiff] out' in attempts to bring in younger employees and carry out a policy and plan to get rid of [Plaintiff] because of his age."  *Id*. ¶¶ 12, 18.  Plaintiff also alleges that the Mayor, Police Chief, Deputy Police Chief, and others "explicitly told [him] they intended to take personnel action against him because of his age."  *Id*. ¶ 19.

Plaintiff alleges that he was demoted from Deputy Police Chief to Major, though he does not specify a date.[3]  *Id*. ¶ 21.  He was subsequently terminated on May 23, 2024, following a meeting with the City Manager.  Am. Compl. ¶¶ 23, 42.  According to Plaintiff, before his termination, he repeatedly complained about the City's discriminatory policies and practices by writing memos and speaking publicly about problems within the Department.  *Id*. ¶ 26.  This included making comments that the new Police Chief was inexperienced and unqualified; the new Deputy Police Chief had a history of misconduct; the City's practices for storing weapons and

---

[3]  Because the Amended Complaint does not specify the date on which Plaintiff was demoted—nor when many of the factual allegations occurred—Plaintiff is advised to clarify the factual timeline on amendment.

Page 2 of 20

training officers were subpar and not in conformity with standards; and the City was engaged in discrimination against older police officers. *Id*. ¶¶ 27, 30–40.

Plaintiff alleges that his demotion and termination "were directly correlated to and derived from [his] protected activities because they occurred within close proximity of the protected activity and because there were no reasons other than retaliatory motives." *Id.* ¶ 29. Plaintiff brings claims for retaliation under Title VII (Count I); violation of the Age Discrimination Employment Act ("AEDA") (Count II); retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983 (Count III); and violation of the Florida Public Whistleblower's Act ("FWPA") (Count IV). *See generally* Am. Compl. According to Defendant, Counts I, II, and III of Plaintiff's Amended Complaint warrant dismissal because they fail to state claims upon which relief can be granted. *See* Mot. at 2.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[T]he standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). "[W]hen plaintiffs 'have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). When evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all inferences in favor of the plaintiff. *Jackson v. Alto Experience, Inc.*, 716 F. Supp. 3d 1327, 1333 (S.D. Fla. 2024) (citing

*Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017)). The Court may only consider allegations in the pleadings and exhibits attached to those pleadings. *Id*. at 1333.

## ANALYSIS

### I. Plaintiff cannot allege a claim for retaliation in violation of Title VII based on age discrimination.

According to Defendant, Count I should be dismissed because "[a]ge is not a protected trait under Title VII," and "[p]urported complaints about alleged age discrimination are likewise not protected under Title VII." Mot. at 3. Defendant is correct. Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). But Title VII only applies to discrimination based on race, color, religion, sex, or national origin. *See id*. § 2000e–3(b).

Indeed, Title VII makes no mention of age discrimination, and the appropriate statute under which to bring age discrimination retaliation claims is the ADEA, 29 U.S.C. § 623. *See Morris v. S. Intermodal Xpress, LLC*, No. CV 20-00126-KD-B, 2020 WL 3791944, at *6 (S.D. Ala. June 9, 2020), *report and recommendation adopted*, No. CV 20-00126-KD-B, 2020 WL 3650959 (S.D. Ala. July 6, 2020); *see also Prince v. Rice*, 453 F. Supp. 2d 14, 19 n.1 (D.D.C. 2006) ("It should be noted that Title VII does not apply to claims of age discrimination. Rather, such claims arise under a separate statute—the Age Discrimination in Employment Act."); *Salamo Martinez v. Celulares Telefonica, Inc.*, 272 F. Supp. 2d 144, 152 (D.P.R. 2003) (liberally construing plaintiff's age discrimination claim under the ADEA where plaintiff attempted to bring a Title VII claim for age discrimination on the basis of age and noting that plaintiff did not bring his cause of action under the appropriate statute).

Here, Plaintiff alleges he "was subjected to retaliation for opposing unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964." Am. Compl. ¶ 47. According to Plaintiff, he "was repeatedly harassed with questions about when he would leave so he could be replaced with younger personnel," with the Police Chief "orchestrat[ing] a meeting for the specific purpose of buying him out to bring in younger employees." *Id*. ¶¶ 18, 20 (internal quotations omitted). At bottom, the discrimination Plaintiff complains of is age discrimination, *see id*. ¶ 1, which is not covered by Title VII. *See* 42 U.S.C. § 2000e–3. As such, the ADEA is the appropriate statute under which Plaintiff may bring claims of age discrimination retaliation.

In his Response, Plaintiff attempts to clarify the basis for his Title VII claim by asserting that it does not rely on age discrimination. Instead, Plaintiff alleges that he was subject to retaliation for "repeatedly complain[ing] about the City's discriminatory policies and practices that violate anti-discrimination statutes and laws." Resp. at 4 (quoting Am. Compl. ¶ 22). But Plaintiff's Amended Complaint lacks any allegations suggesting Plaintiff suffered discrimination on the basis of his race, color, religion, sex, or national origin—which is required to state Title VII claim. Accordingly, Count I of the Amended Complaint must be dismissed.

## II. Plaintiff has plausibly alleged a claim for age discrimination in violation of the ADEA.

Defendant also argues that Count II should be dismissed because Plaintiff has not plausibly alleged an age discrimination claim under the ADEA. Defendant asserts that Plaintiff's Amended Complaint "is devoid of any substantive factual allegations sufficient to establish that any City decisionmaker harbored a specific intent to discriminate against Plaintiff on the basis of his age with respect to any claimed adverse employment action." Mot. at 4. However, Plaintiff has sufficiently stated a claim under the ADEA.

The ADEA makes it "unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Courts in this Circuit apply the *McDonnell Douglas* framework, originally applied to Title VII cases, to claims of discrimination under the ADEA. *See East v. Clayton Cnty., GA*, 436 F. App'x 904, 911 (11th Cir. 2011) (citing *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 n.6 (11th Cir. 2001)). Under the *McDonnell Douglas* framework, a plaintiff can establish a *prima facie* case of age discrimination by showing he was: (1) a member of the protected class, i.e., above the age of 40; (2) qualified for his current position; (3) subject to adverse employment action; and (4) treated less favorable than any younger, similarly situated employee. *Id.*; *see also Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997). Moreover, the plaintiff must establish that "his age was the sole, or 'but for,' reason for the adverse employment action." *Sclafani v. City of Margate*, No. 22-61126, 2023 WL 4363537, at *3 (S.D. Fla. July 6, 2023) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

However, Plaintiff "need not necessarily establish a *prima facie* case [of discrimination] to survive a motion to dismiss, but []he must nevertheless satisfy the pleading requirements of *Iqbal* and *Twombly*." *Melendez v. Town of Bay Harbor Islands*, No. 14-22383, 2014 WL 6682535, at *4 (S.D. Fla. Nov. 25, 2014) (cleaned up). At the pleading stage, Plaintiff must merely allege "facts adequate to raise [his] right to relief above a speculative level." *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 642 (11th Cir. 2018). Thus, "a complaint alleging employment discrimination must simply state sufficient factual content to allow the court to draw the reasonable inference that the employer had discriminatory intent when it fired the plaintiff." *Davis v. Miami-Dade Cnty.*, No. 23-12480, 2024 WL 4051215, at *5 (11th Cir. Sep. 5, 2024) (cleaned up).

As a threshold matter, Plaintiff plausibly alleges that he suffered an adverse employment action. To establish an adverse employment action, "an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). "Termination is an ultimate employment action that is undeniably adverse." *Freytes-Torres v. City of Sanford*, 270 F. App'x 885, 894 (11th Cir. 2008) (citation omitted). However, demotions can also constitute adverse employment actions. *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020) ("Tangible employment actions consist of things that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts[.]"). Plaintiff has sufficiently alleged that Defendant materially altered his employment conditions when it "discriminated against, demoted, harassed, changed duty stations, and fired [him] because of his age." *See* Am. Compl. ¶¶ 28, 54.

Defendant's Motion avers that Plaintiff fails to allege that his age was the sole, but for cause for the adverse employment action he suffered. *See* Mot. at 4. According to Defendant, "Count II of the Amended Complaint is devoid of any substantive factual allegations sufficient to establish that any City decisionmaker harbored a specific intent to discriminate against Plaintiff on the basis of his age with respect to any claimed adverse employment action (termination or otherwise)." *Id*. But Defendant's arguments are unavailing at this early stage of the case.

Defendant is correct that Plaintiff must allege that his age was the sole, but for cause of the adverse employment action he suffered. *See Sclafani*, 2023 WL 4363537, at *3. But Plaintiff has alleged enough to support that inference, as his allegations tell a story of someone pushed out of his role because of his advanced age. Plaintiff, who is 67 years old, alleges that the Deputy Police

Chief told him that "he needed to vacate his position in order for the [Defendant] to promote younger employees" and the Mayor, Police Chief, Deputy Chief, and others "told him they intended to take personnel action against him because of his age." Am. Compl. ¶¶ 17, 19. Plaintiff also alleges that he "was repeatedly harassed with questions about when he would leave so he could be replaced with younger personnel," with the Police Chief "orchestrat[ing] a meeting for the specific purpose of buying him out to bring in younger employees." *Id*. ¶¶ 18, 20 (internal quotation marks omitted). Plaintiff offers many allegations that suggest he was discriminated against because of his age, which lend ample support to the notion that age discrimination was the but for cause of the adverse employment actions he suffered.

These allegations, if taken as true, are sufficient to establish that Defendant—by way of multiple decisionmakers—harbored a specific intent to discriminate against Plaintiff on the basis of his age. Plaintiff alleges that Defendant openly pressured him to leave the Police Department and expressed an intent to hire younger personnel in the lead up to his demotion and eventual termination. And the Amended Complaint offers no "obvious alternative explanation" for Plaintiff's demotion as to rebut the inference that Defendant had discriminatory intent. *See Davis*, 2024 WL 4051215, at *5. These allegations, taken as true, are sufficient to survive Defendant's Motion to Dismiss.

**III.     Plaintiff has failed to sufficiently plead a § 1983 First Amendment retaliation claim against Defendant.**

In Count III of his Amended Complaint, Plaintiff alleges that Defendant retaliated against him in violation of the First Amendment pursuant to 42 U.S.C. § 1983. Section 1983 provides a private right of action against "[e]very person who," acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws[.]" 42 U.S.C. § 1983. Municipalities are considered persons for purposes of the statute. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 701 (1978).

The Court's analysis for Count III is twofold. *First*, the Court must determine if Plaintiff has stated a claim of public-employee First Amendment retaliation. *See Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007). *Second*, the Court must determine if Plaintiff has pleaded facts sufficient to hold the municipality liable under *Monell*. *See* 436 U.S. at 694–95. Ultimately, Plaintiff has failed to state a claim for First Amendment retaliation because he has not plausibly alleged that he spoke as a citizen on a matter of public concern. Notwithstanding, Plaintiff's *Monell* claim also fails.

### a. First Amendment Retaliation

"Retaliation against the exercise of First Amendment rights is a well-established basis for section 1983 liability." *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016). Generally, a public employee may not be demoted or discharged in retaliation for speech protected by the First Amendment. *See Alves v. Bd. of Regents of the Univ. Sys. of Georgia*, 804 F.3d 1149, 1159 (11th Cir. 2015). However, government employees do not enjoy an absolute right to freedom of speech. The Supreme Court has aimed "to strike 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Courts employ a four-part inquiry to assess a public employee's First Amendment retaliation claim. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617 (11th Cir. 2015). The first two steps address whether the speech at issue is constitutionally protected, which turn on questions of law for the court to resolve. *Id.* at 618. "The first [step] requires determining whether the employee spoke as a citizen on a matter of public concern." *Alvez*, 804 F.3d at 1159 (quoting

*Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006)). If the employee has not, the speech is not constitutionally protected, and the employee does not have a cause of action for First Amendment retaliation. *Id*. But if so, the "question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public [based on the government's interests as an employer]." *Id*. Then, the court must balance public and private interests as articulated in *Pickering* to weigh the employee's free speech interest against the interest of the government employer "'in promoting the efficiency of the public services it performs.'" *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001) (quoting *Pickering*, 391 U.S. at 568).[4]

Here, the inquiry ends at the first step. For Plaintiff's speech to be constitutionally protected, he "must have spoken (1) as a citizen and (2) on a matter of public concern." *Moss*, 782 F.3d at 618. Defendant argues that Plaintiff's Amended Complaint fails to articulate any protected speech that may form the basis of his First Amendment retaliation claim. *See* Mot. at 11. In his Response, Plaintiff asserts that he "engaged in protected speech when he reported unlawful discrimination and retaliation within the police department—conduct plainly qualifying as a matter of public concern." Resp. at 13. Plaintiff's Amended Complaint, as currently pleaded, fails to allege with enough specificity that he spoke as a citizen on a matter of public concern.

First, Plaintiff must establish that he spoke as a citizen rather than as an employee. The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the

---

[4] The third step of the analysis "requires Plaintiff to show that [the speech] was a substantial motivating factor in his termination" and "[i]f Plaintiff is able to make this showing, the burden shifts to the City to prove that it would have terminated Plaintiff even in the absence of his speech." *Moss*, 782 F.3d at 618. These final two steps relate to the causal link between the plaintiff's speech and termination, and they are questions of fact to be resolved by a jury unless the evidence is undisputed. *Id.*

Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. "The central inquiry is whether the speech at issue 'owes its existence' to the employee's professional responsibilities." *Moss*, 782 F.3d at 618 (quoting *Garcetti*, 547 U.S. at 421). Courts consider factors like "the employee's job description, whether the speech occurred at the workplace, and whether the speech concerns the subject matter of the employee's job[.]" *Id*.

Plaintiff must also establish that the speech addresses a matter of public concern, as opposed to a matter of personal interest. *See Alvez*, 804 F.3d at 1162. "To fall within the realm of 'public concern,' an employee's speech must relate to 'any matter of political, social, or other concern to the community.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). This inquiry involves examining the "content, form, and context of a given statement[.]" *Connick*, 461 U.S. at 147–48. Courts look to "whether the 'main thrust' of the speech in question is essentially public in nature or private, whether the speech was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was." *Vila*, 484 F.3d at 1340 (quoting *Mitchell v. Hillsborough County,* 468 F.3d 1276, 1283 (11th Cir. 2006)). Whether the speech was communicated publicly or privately is relevant—but not dispositive—to this inquiry. *Alvez*, 804 F.3d at 1162.

Plaintiff's Amended Complaint does not allege enough about the speech in question for the Court to conclude that Plaintiff spoke as a citizen on a matter of public concern. As Defendant notes, Plaintiff's allegations in Count III do not specifically reference *any* speech that Plaintiff allegedly made. *See* Mot. at 11. Turning to the general allegations at the start of Plaintiff's Amended Complaint, Plaintiff alleges that he "wrote multiple memos to City officials, superiors, and personnel" and "spoke publicly and in meetings as an individual by way of his First Amendment right to vocally criticize the City and City Police Department for misfeasance,

malfeasance, gross misconduct, and violation of applicable laws, regulations, and policies." Am. Compl. ¶ 26. Plaintiff then lists five "free speech" activities he engaged in, including stating that (a) the Police Chief was inexperienced and unqualified; (b) the Deputy Police Chief had a history of misconduct; (c) the City's practices for storing weapons were subpar and did not conform with standards; (d) the City's law enforcement training was subpar and did not conform with standards; and (e) the City was engaged in age discrimination against older officers. *Id.* ¶ 27.

These allegations, on their own, are insufficient to establish that Plaintiff spoke as a citizen rather than as an employee. All of Plaintiff's grievances relate to the inner workings of the City's Police Department, where Plaintiff worked as a Deputy Police Chief and then as a Major in charge of administration—both high-ranking roles with administrative duties. *Id.* ¶ 8. Thus, the speech appears related to Plaintiff's professional responsibilities within the Police Department, where he would have observed and learned of these issues. To be clear, "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Lane v. Franks*, 573 U.S. 228, 240 (2014). But Plaintiff fails to establish that this speech *did not* "owe its existence" to Plaintiff's professional responsibilities. *Cf. Zedalis v. Darnell*, No. 1:17CV113-MW/GRJ, 2020 WL 9218526, at *3 (N.D. Fla. Sept. 24, 2020) (finding, at the motion to dismiss stage, that plaintiff spoke as a private citizen rather than as a Sheriff's Deputy when he criticized defendant about work-related matters at an off-site campaign event while running for Sheriff). Plaintiff does not address what his professional duties entailed, where he made these comments, or whether they related to his duties. Therefore, further factual development is needed to clarify whether Plaintiff spoke as a citizen rather than as an employee. *See Moss*, 782 F.3d at 618.

In addition, most of Plaintiff's allegations suggest that he raised these concerns privately and internally. Plaintiff allegedly "wrote multiple memos to City officials, superiors, and personnel," submitted "written complaints to decision makers and during the course of investigations in which he participated," and made protected disclosures in "written memos on March 15th and 20, 2024." Am. Compl. ¶¶ 26, 39–40. "[T]he Eleventh Circuit has repeatedly found, an employee who makes internal reports regarding mismanagement and fraud generally speaks pursuant to her professional duties rather than as a citizen." *Boglin v. Bd. of Trs. of Alabama Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257, 1269 (N.D. Ala. 2018). Indeed, the First Amendment does not empower public employees to "'constitutionalize the employee grievance.'" *Garcetti*, 547 U.S. at 420 (quoting *Connick*, 461 U.S. at 154). To the extent these allegations constitute internal grievance-airing, they suggest Plaintiff was speaking as an employee—*not* as a citizen.

Plaintiff's Amended Complaint similarly fails to establish that he spoke on a matter of public, rather than private, concern. Though not dispositive, courts afford considerable weight to whether the speech was made publicly or privately. *See Alvez*, 804 F.3d at 1162. Here, Plaintiff merely alleges he "spoke *publicly and in meetings* as an individual by way of his First Amendment right to vocally criticize the City and City Police Department for misfeasance, malfeasance, gross misconduct, and violation of applicable laws, regulations, and policies." Am. Compl. ¶ 26 (emphasis added). But Plaintiff's Amended Complaint lacks any context as to where or when he "spoke publicly and in meetings." *Id*. Plaintiff only references one—presumably private— meeting on the day he was fired, where he "provided the City Manager with written and verbal lists of the misconduct described herein." *Id*. ¶ 42. And Plaintiff wholesale fails to specify where, when, or how he made public comments.

That said, a public employee's speech about problems within their city's police department *can* implicate matters of public concern. In *O'Neal v. City of Hiram*, the Eleventh Circuit held that a police officer spoke on matters of public concern when he "complained about workers' compensation fraud, discrimination, retaliation, the former police chief's interference with the third-party investigation, and alleged retaliation and discrimination against . . . a City employee" and "made these complaints public by voicing them to the Mayor and City Council, among others." No. 21-11327, 2022 WL 2921303, at *4 (11th Cir. July 26, 2022). The problem for Plaintiff is that this inquiry turns on the speech's "content, form, and context." *Id*. at *3. And unlike in *O'Neal*, that is not apparent from Plaintiff's Amended Complaint. Nowhere does Plaintiff allege when, where, or to whom he "spoke publicly." Am. Compl. ¶ 26.

As such, Plaintiff has not established that he engaged in protected speech. Accordingly, Defendant's Motion to Dismiss Count III of the Amended Complaint is granted.

### b. *Municipal Liability*

Plaintiff's Amended Complaint also fails to adequately plead municipal liability pursuant to 42 U.S.C. § 1983. Separate from establishing the elements of a First Amendment retaliation claim, Plaintiff must also show that execution of the municipality's policy or custom caused the alleged constitutional injury. *See Monell*, 436 U.S. at 694–95. "A plaintiff can establish municipal liability under *Monell* in three ways: (1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

Plaintiff does not advance any of these theories for municipal liability in Count III of his Amended Complaint. Instead, he quotes from § 1983 and then repeatedly emphasizes his right to

free speech under the First Amendment. *See* Am. Compl. ¶¶ 57–72. Defendant's Motion asserts that "Plaintiff has proffered no facts which would establish that any City policy or custom was the moving force behind Plaintiff's purported constitutional deprivation as required by *Monell*." Mot. at 8. Defendant is correct.

The allegations in Plaintiff's Amended Complaint are wholly conclusory and do not identify any widespread practice, pervasive custom, or decisionmaker with policymaking authority who violated Plaintiff's constitutional rights. *See McCants v. City of Mobile*, 752 F. App'x 744, 748 (11th Cir. 2018) (affirming dismissal of claims against city because plaintiffs "fail to support their municipal liability claims with anything other than 'a formulaic recitation of the elements of the cause of action.'") (quoting *Iqbal*, 556 U.S. at 678); *Perez v. City of Opa-Locka*, 629 F. Supp. 3d 1164, 1184 (S.D. Fla. 2022) (finding the allegation that "[t]he City has a history of retaliating against those who speak out about gross financial mismanagement / waste of public funds" was conclusory, factually-unsupported, and insufficient to plausibly allege a "custom or practice" of retaliation); *Coakley v. City of Hollywood*, No. 19-62328, 2021 WL 2018914, at *3 (S.D. Fla. Jan. 15, 2021), *report and recommendation adopted*, No. 19-62328, 2021 WL 2012360 (S.D. Fla. May 20, 2021) (finding plaintiff's allegations insufficient to satisfy *Monell* under *Iqbal*/*Twombly* pleading requirements because the complaint "fails to identify any formal policy or to include any non-conclusory allegations regarding any unofficial policy or custom that may be at issue."). Therefore, Plaintiff's allegations are insufficient to withstand dismissal of Count III.

Plaintiff inappropriately attempts to remedy this pleading deficiency in his Response, where he advances new theories in support of municipal liability. *See Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss."). Specifically, Plaintiff claims

that "the Amended Complaint sets forth detailed factual allegations supporting both an unconstitutional custom rooted in deliberate indifference and a policy or practice that, even if facially lawful, directly caused retaliation against [Plaintiff] for engaging in protected speech." Resp. at 9. Plaintiff first points to his "allegations the City knew of ongoing constitutional violations and failed to act," which constitute an unofficial custom of deliberate indifference. *Id*. at 10. Plaintiff then purports to identify actual "policies and practices" where "the City failed to adequately train officers, tolerated a pattern of retaliation, and perpetuated a culture of discrimination that directly caused the retaliation[.]" *Id*. at 12.

Plaintiff fails to state a § 1983 claim against Defendant based on an unofficial custom of deliberate indifference. "To impose § 1983 liability on a municipality, a plaintiff must show that: (1) his or her constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that policy or custom caused the constitutional violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Here, aside from Plaintiff's failure to plausibly allege a First Amendment violation, Plaintiff also fails to establish that Defendant had a custom or policy that constituted deliberate indifference to a constitutional right.

"To prove § 1983 liability against a municipality based on unofficial custom, a plaintiff must establish a widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Heath v. Miami-Dade Cnty.*, 736 F. Supp. 3d 1149, 1159–60 (S.D. Fla. 2024) (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)). In other words, the unofficial custom must be "so pervasive" as to constitute the "functional equivalent" of an official

policy, and an isolated incident is insufficient to rise to that level. *Id*. (citing *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003)).

Plaintiff's allegations fail to establish that Defendant's actions against him were grounded in an unofficial custom and not the result of an isolated incident. Despite making a passing reference to Defendant's retaliation against "other older, more qualified, and experienced City police officers" and noting "an alarming mass exodus of the City's most experienced and qualified police officers," Am. Compl. ¶¶ 10, 31, Plaintiff's allegations do not plausibly demonstrate that Defendant's conduct constitutes anything more than a discrete incident affecting only Plaintiff. *Cf. Heath*, 736 F. Supp. 3d at 1160 (finding plaintiff plausibly alleged a § 1983 claim based on defendant's "years-long, *de facto*, and unwritten policy of deliberate indifference to the serious medical needs of inmates, like [the plaintiff].").

To the extent Plaintiff attempts to advance a claim based on official custom, it similarly fails. In his Response, Plaintiff obliquely references "policies and practices, while arguably not facially unconstitutional, [which] created an environment in which protected speech was punished and whistleblowers were silenced." Resp. at 12. Specifically, Plaintiff asserts that Defendant "failed to adequately train officers, tolerated a pattern of retaliation, and perpetuated a culture of discrimination that directly caused the retaliation Seiglie suffered for speaking out." *Id*. But these formulaic recitations fall short of identifying an official policy or custom. And while a "fail[ure] to adequately train officers," can serve as a basis for a § 1983 claim in certain contexts, this theory is wholly inapplicable to Plaintiff's circumstances. *Id*.

"[M]unicipal liability under § 1983 for failure to train applies in only a very narrow range of circumstances." *Mingo v. City of Mobile, Ala.*, 592 F. App'x 793, 800 (11th Cir. 2014). "To establish that a municipality was 'deliberately indifferent' in the failure-to-train context, a plaintiff

must demonstrate that the municipality knew of the need to train in a particular area and made a deliberate choice not to take any action." *Heath*, 736 F. Supp. 3d at 1168 (quoting *Mingo*, 592 F. App'x at 799). But Plaintiff, who served as Deputy Police Chief and Major, alleges First Amendment retaliation. Thus, the constitutional violation Plaintiff alleges does not arise from untrained officers violating his First Amendment rights; rather, he alleges retaliation by Defendant because he complained about unrelated training deficiencies.

In sum, for the reasons set forth above, Count III of Plaintiff's Amended Complaint is dismissed.

### IV. Plaintiff's references to hostile work environment, harassment, and the Florida Civil Rights Act will not be stricken.

Defendant also moves to strike Plaintiff's references to "harassment," "hostile work environment," and the Florida Civil Rights Act ("FCRA") in his Amended Complaint as immaterial, impertinent, and otherwise scandalous. *See* Mot. at 6, 12–15; *see also* FED. R. CIV. P. 12(f) (explaining the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). Defendant further argues that any references to "harassment," "hostile work environment," or the FCRA should be stricken because the Amended Complaint does not specifically plead these claims. *See* Mot. at 5–7, 12–15.

While the Court recognizes that Plaintiff's allegations of "harassment" and "hostile work environment" do not form the basis of separate claims, striking said references is unwarranted as they appear to be descriptive allegations of Defendant's conduct which are not wholly immaterial in nature. *See U.S. Equal Emp. Opportunity Comm'n v. Pediatric Health Care Care All., P.A.*, No. 8:20-CV-1428-T-60CPT, 2020 WL 6485003, at *2 (M.D. Fla. Nov. 4, 2020) (denying motion to strike allegations of harassment, which plaintiff included as "background for the claim of retaliation," because the court could not conclude that the "harassment allegations bear no relation

to the retaliation claim or that their presence will prejudice Defendant."); *see also Nash v. O.R. Colan Grp., LLC*, No. 12-60759, 2012 WL 4338817, at *1 (S.D. Fla. Sept. 20, 2012) (explaining that a motion to strike is a "drastic remedy" which is "disfavored by the courts.").

As for Plaintiff's references to the FCRA, it appears that Plaintiff may have inappropriately commingled different statutory claims. But striking said reference from the Amended Complaint is unwarranted as Plaintiff is being given leave to amend. If Plaintiff seeks to assert a claim under the FCRA—a different statute from the Florida Public Whistleblower Act, which Plaintiff alleges a violation of in Count IV—Plaintiff shall plead said claim in a separate count on amendment.

Accordingly, the Court denies Defendant's Motion to Strike.

### V. Plaintiff's request for leave to amend is granted.

Plaintiff seeks leave to amend should the Court dismiss any of his claims. *See* [ECF No. 14] at 18–19. The Court will afford Plaintiff an opportunity to amend in order to comply with this Court's directives before it dismisses any claims with prejudice.[5] However, the Court cautions Plaintiff that further amendments will not be permitted if Plaintiff does not cure the deficiencies identified in this Order. Any amended pleading shall comply with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida, and address the deficiencies identified above.

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, [ECF No. 9], is **GRANTED IN PART**.

---

[5] The Eleventh Circuit "ha[s] never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor [] concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016).

      2.      Counts I and III of the Amended Complaint are **DISMISSED** *without prejudice and with leave to amend*.

      3.      Within **fourteen (14) days** of this Order, Plaintiff shall file a Second Amended Complaint that complies with the instructions set forth herein.

      **DONE AND ORDERED** in Miami, Florida, this 10th day of February, 2026.

      _____
      **RODOLFO A. RUIZ II**
      **UNITED STATES DISTRICT JUDGE**